```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                            CRIMINAL ACTION NO. 2:16-00205

**DARRELL SPICER**

<u>MEMORANDUM OPINION AND ORDER</u>

The defendant, Darrell Spicer, is charged in a one-count indictment with possession with intent to distribute heroin. A revocation petition has also been filed alleging the same conduct.

The defendant has filed on December 13, 2016, his Motion to Dismiss Indictment or in the Alternative to Suppress Evidence. The court conducted an evidentiary hearing on the motion on December 20, 2016. The court makes the findings of fact that follow by a preponderance of the evidence, together with the court's conclusions of law.

In the motion, the defendant asks the court to dismiss the indictment or in the alternative to suppress evidence of the "controlled buy" conducted by a confidential informant ("CI") who was acting under contract with and under the direction of

the Kanawha County Sheriff's Office on June 15, 2016, and all subsequent evidence that constitutes fruits of the illegally obtained evidence, including all evidence seized from his residence on June 15, 2016, and statements made by defendant to law enforcement during the search of his residence and at the police detachment during the early morning hours of June 16, 2016.  As not uncommonly happens, it is noted that the CI was persuaded to act as an informant for law enforcement by virtue of having been himself/herself the subject of controlled buys of illicit controlled substances.  Consequently, the CI acted as an informant under contract in the hope of leniency if not forgiveness.

In support of the motion, the defendant alleges, and the court now finds, that in conducting the controlled buy that was supervised by Cpl. J. M. Vernon, Deputy Sheriff of Kanawha County, West Virginia, the CI used by the law enforcement authorities drove a vehicle to and from the pre-arranged location without a valid license to operate a motor vehicle in the State of West Virginia, having had the privilege revoked on or about January 16, 2009, due to driving while under the influence with a minor under the age of sixteen on or about July 31, 2008; and on or about August 16, 2015, the CI was charged

2

with driving under the influence of a controlled substance (heroin), driving on a revoked license for driving under the influence and two charges of simple possession of marijuana and heroin, the CI having pled guilty on February 23, 2016, to driving under the influence and a violation of controlled substances for which the CI received a 90-day suspended sentence for six months of unsupervised probation.

The defendant contends that allowing the CI to drive a vehicle in connection with the controlled buy resulted in the violation of the sheriff's contract with the CI inasmuch as that contract precludes the CI from engaging in criminal conduct.  In addition to disregarding the terms of its own contract, the law enforcement authorities are said to have induced the CI knowingly to violate the law by driving without a license and that such conduct was in violation of the terms of the CI's probation and it served to sanction illegal conduct that encourages disrespect for the law and endangers the public at large, all contrary to the defendant's constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

In evaluating whether the evidence obtained by the CI was unconstitutionally tainted by the CI's unlicensed driving of

3

a vehicle, as well as the evidence obtained as a result of the acquisition of and execution of a search warrant of the defendant's residence that was subsequently obtained from a local magistrate based on that evidence, the court considers the surrounding circumstances that are aptly delineated in the affidavit executed by Cpl. Vernon in support of the search warrant that was obtained and executed at the defendant's residence on the same evening as the controlled buy.  The court accordingly finds, with the single exception that the CI in fact drove to the site of the controlled buy, the following as set forth in the affidavit in the words of Cpl. Vernon:

> On Tuesday, June 14, 2016 I was advised by a confidential informant [redacted] hereafter referred to as CI, in regards to a subject involved in trafficking large quantities of heroin in the Cross Lanes area.  The CI identified the subject as an older black male named "Darrell Spicer."  The CI stated that he/she had obtained large quantities from Darrell Spicer twice a week for approximately 3-4 months.  The CI further stated that he/she purchased 7-10 grams of heroin "at least" each time. ... The CI advised that after buying from Spicer he/she had seen him drive back to Greywood Drive where the CI advised he lived.
>
> During the course of my investigation I confirmed Spicer's identification . . . [T]wo vehicles registered to him confirmed his address of 5270 Greywood Dr. apartment #7.  A DMV check revealed Spicer owned two vehicles registered in his name at this listed address.  This information was further confirmed by the CI who advised Spicer owned a silver jeep Cherokee and Green sedan.  The DMV check showed a 2001 green colored Oldsmobile Aurora bearing W.V. registration 9YN834 and a silver 1999 Jeep Cherokee

4

bearing W.V. registration 9YC925.  The CI advised these were the vehicles Spicer drove to meet him or her to deliver the heroin.  These vehicles were registered to Spicer with the same listed address 5270 Greywood Dr apartment #7.

    On Wednesday June 15th 2016 at approximately 04:00 pm I was contacted by the CI who advised that a pre-arranged buy had been set up with Spicer for seven grams of heroin for one thousand one hundred and ninety dollars ($1190).  The buy was arranged to happen in the Cross Lanes area.

    At approximately 05:00 pm I met with the CI and prepped for the controlled buy.  I searched the CI and found him/her free of any contraband or U.S. Currency.  Lt. Carper searched the C.I.'s vehicle and the C.I.'s vehicle was found to be free of contraband and U.S. Currency.  Following this I provided the CI with the pre-recorded buy money ($1,190.00 U.S. Currency) and electronic monitoring audio and video recording devices.  They were activated at this time.

    Following this the CI placed a recorded phone call to Spicer to confirm the buy on his cellular phone (304-415-8952).  Spicer arranged the CI to meet him at "Jolis" gambling bar in the area of his residence.  He further confirmed with the CI the exact quantity of heroin for the buy.

    The CI was drove to this location at approximately 07:46pm.  We arranged our undercover vehicle as to observe the CI and the entire parking lot at Jolis.  Numerous detectives from the Kanawha County Sheriff Dept. and MDENT assisted with surveillance on this controlled buy.

    At approximately 08:29pm Det. Howery observed Spicer leaving his apartment wearing blue jeans and a dark colored shirt.  Det. Knapp observed Spicer getting in his vehicle (green Oldsmobile sedan) and Det. Howery observed him driving from his residence to Jolis where he pulled next to the CI.  I was able to identify the black male driver as Spicer as his driver window was down during the buy.

At approximately 08:33 pm the CI got in the vehicle with Spencer (sic, Spicer). Following a brief conversation, the C.I. gave Spicer the pre-recorded "buy" money and Spicer began counting the buy money. After counting the money, Spicer gave the C.I. a quantity of suspected heroin in a plastic baggie. Following a short conversation the CI exited Spencer's (sic, Spicer's) vehicle at 08:41pm.

Following the buy, I immediately met with the CI at approximately 08:45pm. The CI provided me with the suspected heroin and recording devices. I then searched the CI and found him/her free of any other contraband or U.S. Currency. Lt. Carper searched the C.I.'s vehicle and the vehicle was found to be free of contraband and U.S. Currency.

I then obtained a statement from the CI concerning the controlled narcotics purchase. The CI advised that he/she met Spicer at the determined buy location in Cross Lanes area near Spicer's residence. The CI advised the (sic, that) Spicer drove up in his vehicle and he/she got in the passenger side of the vehicle. Following a brief conversation the CI advised that Spencer (sic, Spicer) counted the money and the transaction was made. The CI advised he/she got out of Spicer's vehicle and met with the police.

Following the controlled buy I was advised by Det. Howery [that] Spicer immediately returned to his residence and was seen walking to and entering his residence at 5270 Greywood Drive apartment number 7.

Following this, I returned to headquarters and processed the suspected heroin. I noticed the white powder was packaged in a large plastic zip-lock style bag and secured tightly at the top with a knot. It was photographed and tested positive for Fentanyl. It weighed approximately 6.8 grams and was secured and submitted as evidence at headquarters. Fentanyl is a schedule II controlled narcotic.

As Cpl. Vernon testified, the CI was allowed to drive to the site of the controlled buy, even though it was known that the CI had no license to drive a vehicle.  The CI was allowed to do so by virtue of the CI's explanation to the law enforcement officers that it would have been highly unusual for the CI to be accompanied by anyone else at the time that the CI was to meet with the defendant for the purpose of making a buy inasmuch as the CI had similarly engaged with him on earlier occasions while alone.  If the CI were to bring someone else along, the deal would not close and the CI's safety would be endangered.  At the same time, it was prudent for the officers to move swiftly, once they learned that the buy could be made, in order to seize upon the fleeting opportunity presented by the CI to effect the transaction.  During the CI's journey to the ultimate site of the buy, the officers attempted to follow the CI's vehicle, but lost it at one point in traffic though in due time the officers caught up with the CI's vehicle.  The transaction itself took place under the watchful eyes of multiple officers, albeit at a distance, and it was duly recorded.

It is true that Cpl. Vernon in his affidavit in support of the search warrant erroneously stated that the CI "was drove" to the site, a statement which he now says was a

7

clerical error.  Even so, in the scope of things, the error was not a grievous one.  The circumstances justified the use of the CI driving to the site even though not licensed to do so.  The court concludes that no violation of constitutional level has occurred.

Although the defendant's counsel at the evidentiary hearing acknowledged that the defense did not think a probable cause issue arose by virtue of the failure of the affidavit for the search warrant to state that the CI operated a vehicle on the occasion of the controlled buy without a license after two DUI charges and simple possession charges for which the CI was on probation, it appears to the court in any event that such omission was neither intentional or reckless, nor would it have mattered to a neutral judicial officer in determining whether to issue the warrant.  With or without the omitted matter, the search warrant in this case would have issued inasmuch as the affidavit in support was replete with detailed evidence of a credible nature, much of it grounded on unimpeachable sources, that provided more than ample reason to expect that drug-related objects so sought would be found at the defendant's residence.

It is accordingly ORDERED that the defendant's Motion to Dismiss Indictment or in the Alternative to Suppress Evidence be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED: December 30, 2016

John T. Copenhaver, Jr.
United States District Judge